

United States District Court
Southern District of Texas
FILED

**OCT 3 1 2002**

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ELIAS LIMAS, INDIVIDUALLY AND AS  §
EXECUTOR OF THE ESTATE OF    §
MARIA PETRA BANDA; ELIAS LIMAS  §
GARCIA, JR.; RAUL LIMAS GARCIA;  §
JESUS MANUEL LIMAS GARCIA;   §
MARTA ALICIA GARCIA; and    §
MARIA ISABEL LIMAS GARCIA   §
             §
VS.            § CIVIL ACTION NO. B-02-122
             §
AIRPAX CORPORATION, L.L.C.;   §
AIRPAX CORPORATION; and    §
PHILLIPS ELECTRONICS NORTH  §  **"JURY"**
AMERICA CORPORATION    §

### DEFENDANT, AIRPAX CORPORATION, L.L.C.'S, MOTION TO RECONSIDER AND BRIEF IN SUPPORT

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes Airpax Corporation, L.L.C. and makes and files this its Motion to Reconsider

and respectfully shows as follows:

### I. STATEMENT OF THE ISSUES

Should the Court Reconsider its Remand Order of October 24, 2002 as complete diversity

exists between the parties and the jurisdictional amount requisites of 28 U.S.C. § 1332 have been

met?

### II. SUMMARY OF THE ARGUMENT

Complete diversity exists between the parties as the supplemental affidavit shows that Airpax

Corporation, L.L.C. is wholly owned by two Delaware Corporations.  Further, the jurisdictional requisites have been met as Mexican Law does not apply to those limits and it is facially apparent that the plaintiff's claims are for more than $75,000.00

**III. DIVERSITY**

*A. The Parties are Completely Diverse*

The Court found in its remand order of October 24th, 2002, that Airpax Corporation, L.L.C. had not properly established the citizenship of each of its members so as to establish complete diversity.  It was on this basis that the Court determined it lacked subject matter jurisdiction.

Attached hereto and incorporated by reference as exhibit 1 is the affidavit of Micheal Rabasca, VP and CFO of Airpax, Corporation, L.L.C.  Attached to that affidavit are Tab A, The LLC Agreement of Airpax Acquisition, L.L.C; Tab B, the Certificate of Formation of Airpax Acquisition, L.L.P.; Tab C, a Certificate of Amendment changing the name of the Airpax Acquisition to Airpax Corporation, L.L.C.; Tab D, the Certificate of Incorporation for Electronic Packaging Products, Inc.; Tab E, the Certificate of Incorporation of Power Protection Products, Inc.; and Tab F, the Certificate of Incorporation for Thermal Sensing Products, Inc.  Per the LLC Agreement, the three Delaware Corporations have been the only owners of Airpax Corporation, L.L.C.

Any civil action of which the district courts of the United States have original jurisdiction may be removed from state court to federal court.  28 U.S.C. § 1441(a).  The district courts of the United States have original jurisdiction of all actions between citizens of a state and citizens or subjects of a foreign state.  28 U.S.C. § 1332(a)(2). As the three individual corporate owners are not

2

L.L.Cs but individual Delaware corporations there is complete diversity between the Plaintiff and Defendant. 28 U.S.C. § 1332(c)(1). Therefore, Defendant respectfully request that the court reconsider its prior order remanding this case back to the 404th Judicial District Court of Cameron County, Texas for lack of subject matter jurisdiction.

## IV. AMOUNT IN CONTROVERSY

### A. The Amount in Controversy Is Facially Apparent

The Fifth Circuit has adopted a two-step test when a Plaintiff either pleads a specific sum under $75,000.00 or does not plead a dollar amount at all. *Carnahan vs. Southern Pacific Railroad Transportation Co.*, 914 F.Supp. 1430 (E.D. Tex.1995). First, if it is "facially apparent" from the state court petition that the amount in controversy is **likely to exceed** $75,000.00 then the Defendant need only point this out to successfully bear its burden. On the other hand, if such a determination is not apparent, then the Defendant must prove by a "preponderance of the evidence" the jurisdictional facts in question. *De Aguilar vs. Boeing Co.*, 11 F.3rd 55, 58 (5th Cir.1993) (known as DeAguilar I); *Allen vs. R&H Oil & Gas Co.*, 63 F.3rd . 1326, 1336(5th Cir.), *reh'g denied*, (finding that *De Aguilar I* established that a party seeking removal of action that does not allege a specific amount need only prove the jurisdictional amounts by a preponderance of the evidence").

In *Vasquez v. Bridgestone/Firestone*, 192 F.Supp.2d 715 (E.D. Texas 2001), a case exactly on point with many of the issues raised here, the court stated:

> the plaintiffs insist that the case should be remanded to Texas state court because the jurisdictional amount in controversy requiring damages in excess of $75,000 cannot be met under the remedies provided in Mexican law. That contention is also meritless. The amount in controversy determination can be satisfied if it is facially apparent that the damages sought by the plaintiffs exceed the jurisdictional amount

3

> at the time of removal. *See Aguilar v. Boeing Co.,*11 F.3d 55, 57 (5th Cir.1993) There, it was facially apparent that a wrongful death claim, including terror in anticipation of death, loss of companionship, and funeral expenses exceeded the jurisdictional amount at the time of removal. The same analysis pertains to the *Vasquez* plaintiffs' claims. In particular, the plaintiffs are proceeding in the U.S. courts because Mexican law limits recovery to a lower sum per individual. Thus, although their state lawsuit does not specify an amount of damages, they must be seeking more than that amount, which satisfies diversity jurisdictional requirements.

*Id.* at 719-20.

Here, as was exactly the case in *Vasquez,* it is facially apparent that the amount in controversy is likely to exceed $75,000.00. Plaintiffs' petition herein establishes that this is a **wrongful death** action against the Defendant Airpax, L.L.C. and Philips Electronics North America Corporation in which **exemplary damages** are sought. The Plaintiffs have plead that the Defendant, Airpax, L.L.C., is consciously indifferent to the death of Plaintiffs' decedent and willfully intended such death with malice.

Here, as in *Vasquez,* the plaintiffs are proceeding in the U.S. courts because Mexican law limits recovery to a lower sum per individual. Instead of availing themselves of the Mexican forum, which is an appropriate and available forum, the plaintiffs have brought this action in Texas courts specifically to avoid the limits placed by Mexican law on their potential recovery.

"Unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938). In *St. Paul Mercury* the Court announced "legal certainty" test for diversity cases: In order for a federal court to decline jurisdiction, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount." *Id.* at 289, 58 S.Ct.

4

at 590. In *De Aguilar v. Boeing Co.*, 47 F.3d 1404 (5th Cir.1995), the court stated:

> there is no state provision that limits the amount of damages plaintiffs are seeking, or can recover, to the amount they have asked for in the complaint, i.e., an amount not to exceed $50,000. In summary, therefore, a plaintiff, in a case for unliquidated damages, cannot, absent a further showing, avoid removal by pleading for damages under the jurisdictional amount where a state rule prevents such pleading and where defendants are able to show that it is <u>facially apparent</u> that the amount in controversy exceeds $50,000.

*Id.* (analyzing the complaint under the prior $50,000.00 federal jurisdictional limits).

In *De Aguilar* the Plaintiffs specifically pled a damage amount of under $50,000.00. Despite that pleading, the court found that it was facially apparent that the Plaintiffs claims would be in excess of the jurisdictional limits as support for federal jurisdiction. Here the Plaintiffs have not pled a specific amount but have asked for "a sum in excess of the minimum jurisdictional limits of the state court, pre-judgment interest at the highest rate permitted by law; post judgment interest from the date of judgment until paid by the highest rate permitted by law, costs of court, exemplary damages and other and further unknown and unnamed relief."(Plaintiffs' Petition). As was the case in *Vasquez* and *De Aguilar*, it is facially apparent that the claims here are in excess of the $75,000 jurisdictional limit.

> B.     *Plaintiffs Have Not Met Their Burden of Proof That Their Sum Is Really for less than the Jurisdictional Amount as They Have Not Pled Limits of Mexican Law upon Their State Court Recovery and Mexican Law Does Not Apply in Determining the Jurisdictional Limits*

Once Defendants have established that the amount in controversy exceeds the jurisdictional threshhold required by 28 U.S.C. § 1332, Plaintiffs bear the burden to prove "to legal certainty" that their sum is really for less than the jurisdictional amount. *Maley vs. Design Benefits Plan, Inc.*, 125

5

F.Supp.2d 197, 199 (E.D. Tex.2000). Plaintiffs have apparently attempted to do so by arguing that

Defendants have admitted the amount in controversy requirement has not been met because of their

reference to the Notice of Removal that Mexican law should apply and that the application of

Mexican law to this controversy would limit Plaintiffs' recovery of $75,000.00 or less. As was the

case in *Vasquez* and *De Aguilar*, this argument is without merit.

The Plaintiffs here have chosen the Texas forum to bring an action and have not pled any

limits upon their recovery under either Mexican or Texas law. Once again, *De Aguilar* analyzed a

very similar fact situation where the Plaintiffs pled the Mexican heirship law limited their recovery

to under the federal jurisdictional amounts:

> The fact that the accident took place in Mexico, or that there was an accident at all,
> is fortuitous and simply not relevant to our particular choice-of-law decision. Rather,
> the important fact is that the plaintiffs chose to file a *suit* in Texas under Texas law.
> Whether the plaintiffs could effectively limit the damage recovery to the estates of
> the decedents relates more directly to the "procedural" aspects of the suit and not to
> the substantive portions of the cause of action . . .
> * * *
>
> Mexico has no underlying interest in the application of its law to determine who can
> bring a cause of action or bind the estate in a Texas cause of action. Texas certainly
> has an interest in requiring those who seek to take advantage of Texas law to meet
> certain requirements. In addition, uniformity and predictability in Texas courts would
> be promoted when deciding who has the authority to pursue actions on behalf of
> estates. This is a false conflict, and Texas law applies. See *Duncan*, 665 S.W.2d at
> 422. In this situation, we have no doubt that a Texas court would choose to apply
> Texas law.

*Id* at 1414.

Once again, the Plaintiffs in *De Aguilar* had tried to limit their amount in controversy under

Mexican Law as heirs of the estate. The court found that despite that attempt, as is exactly the case

6

here, that "the important fact is that the plaintiffs chose to file a *suit* in Texas under Texas law." *Id.* Here, unlike the unsuccessful assertions of jurisdictional limits in *De Aguilar*, the Plaintiffs have not asserted any basis for a limitation on their recovery and have chosen to file suit in Texas when Mexico was an available forum.

Further, even if the application of Mexican law could work to limit Plaintiffs' recovery, so would a jury's failure to find liability against these or other Defendants herein. As noted by the Court, in *Maley*: "Although the Court is not certain that Plaintiffs will recover more than $75,000.00 (or anything for that matter), from the face of the state court petition, **it is more likely than not that Plaintiffs' claims exceed the jurisdictional amount.**" *Maley,* 125 F.Supp.2d at 199 (emphasis added).

Thus, the Court must confine its inquiry to the facts as they existed at the time of the removal to determine subject matter jurisdiction. Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction. *St. Paul Mercury Indemnity Co.* 303 U.S. 283, at 290, 58 S.Ct.,586 at 591. Therefore, even if there was a subsequent application of Mexican law to this controversy this court would still have subject matter jurisdiction. Lastly, Plaintiffs could easily erase all controversy concerning this issue merely by attaching to their Motion for Remand, a sworn Affidavit that the damages that they seek are below the minimum amount of $75,000.00. [*De Aguilar I* , 11 F.3rd at 57; see also *S.W.S. Erectors*, 72 F.3rd at 492.] It should be noted that the Plaintiffs did not contest removal with such a sworn Affidavit.

## V. CONCLUSION

As the diversity between the parties is complete, the appropriate jurisdictional amount in

controversy is facially apparent, and the Plaintiffs have failed to properly limit any recovery under the court's jurisdictional limits, this court has subject matter jurisdiction and the case should be properly removed.

WHEREFORE, PREMISES CONSIDERED, Airpax Corporation, L.L.C. request that the court reconsider its order granting Plaintiffs' Motion to Remand and for such other and further relief, general, special, legal and equitable for which they might be entitled.

Respectfully submitted,

F. Edward Barker
State Bar No. 01741000
Federal I.D. No. 970
Attorney-in-Charge for Defendant
Airpax Corporation, L.L.C.
Tower II, Suite 1200
555 N. Carancahua St.
Corpus Christi, Texas 78478
(361) 881-9217; FAX: (361) 882-6590

OF COUNSEL:
BARKER, LEON, FANCHER & MATTHYS,
L.L.P.

## CERTIFICATE OF CONFERENCE

Counsel for Defendant has personally contacted Counsel for the Plaintiff. Counsel for Plaintiff indicated he is opposed to said motion.

F. Edward Barker

8

## CERTIFICATE OF SERVICE

I, F. Edward Barker, certify that a true and correct copy of the foregoing instrument was forwarded to all counsel of record, in the manner set forth below, on this the 30th day of October, 2002.

**Via Certified Mail/RRR No.** 7002 1000 0005 6854 1674
Mr. William R. Edwards, III
Mr. John Blaise Gsanger
Edwards Law Firm
P.O. Box 480
Corpus Christi, Texas 78403-0480

**Via Certified Mail/RRR No.** 7002 1000 0005 6854 1681
Mr. Raymond A. Neuer
Sheehy, Serpe & Ware
2500 Two Houston Center
909 Fannin Street
Houston, Texas 77010-1003

F. Edward Barker

**CAUSE NO. 2001-06-2855-G**

| | | |
|---|---|---|
| ELIAS LIMAS, INDIVIDUALLY AND AS | § | IN THE DISTRICT COURT |
| EXECUTOR OF THE ESTATE OF | § | |
| MARIA PETRA BANDA; ELIAS LIMAS | § | |
| GARCIA, JR.; RAUL LIMAS GARCIA; | § | |
| JESUS MANUEL LIMAS GARCIA; | § | |
| MARTA ALICIA GARCIA; and | § | |
| MARIA ISABEL LIMAS GARCIA | § | |
| | § | |
| VS. | § | 404TH JUDICIAL DISTRICT COURT |
| | § | |
| AIRPAX CORPORATION, L.L.C.; | § | |
| AIRPAX CORPORATION; and | § | |
| PHILIPS ELECTRONICS NORTH | § | |
| AMERICA CORPORATION | § | CAMERON COUNTY, TEXAS |

<u>**AFFIDAVIT OF MICHAEL V. RABASCA**</u>

| | |
|---|---|
| COUNTY OF DORCHESTER | § |
| | § |
| STATE OF MARYLAND | § |

BEFORE ME, the undersigned authority, personally appeared Michael Rabasca, who, being by me duly sworn, deposed and said:

1.      My name is Michael Rabasca.  I am over 18 years of age, of sound mind, capable of making this affidavit, and personally acquainted with the facts stated in it.

2.      I am the Chief Financial Officer of Airpax Corporation, L.L.C., and by virtue of both my position within the company as well as length of employment with the company, I have personal knowledge of the following facts:

a)      In February of 1999, Airpax Corporation's management accomplished a buy-out of all of the stock in Airpax Corporation and formed a new corporation entitled Airpax Corporation, L.L.C..  At that time, Philips North American Electronics Corporation ceased to have any ownership interest,   control or   influence over Airpax

Corporation. The "Airpax Corporation" which had been a subsidiary of Philips North American Electronics Corporation was dissolved at that time and the only remaining survivor of the Airpax entities is the present survivor, Airpax Corporation, L.L.C.

3.  I am the am the Chief Financial Officer of Airpax Corporation, L.L.C. and as such I am a custodian of the records of attached to this affidavit.

4.  The records attached to this affidavit, consisting of 33 pages are kept by Airpax Corporation, L.L.C. in the regular course of its business. It was the regular course of that business for an employee or representative of the business with knowledge of the act, event, condition, or opinion recorded to keep these records or to transmit information thereof to be included in such records. The records were made at or near the time of the act, event, condition, or opinion recorded, or reasonable soon thereafter. The attached records are true and correct and duplicates of the originals.

5.  Airpax Corporation, L.L.C., is a Delaware Corporation with its principal place of business in Cambridge, Maryland. Attached hereto and Incorporated by reference are Tab A, The LLC Agreement of Airpax Acquisition, L.L.C; Tab B, the Certificate of Formation of Airpax Acquisition, L.L.P.; Tab C, a Certificate of Amendment changing the name of the Airpax Acquisition to Airpax Corporation, L.L.C.; Tab D, the Certificate of Incorporation for Electronic Packaging Products, Inc.; Tab E, the Certificate of Incorporation of Power Protection Products, Inc.; and Tab F, the Certificate of Incorporation for Thermal Sensing Products, Inc. Per the LLC Agreement, the three Delaware Corporations have been the only owners of Airpax Corporation, L.L.C.

6.  Electronic Packaging Products was sold and no longer has any interest in Airpax Corporation, L.L.C., who is presently wholly co-owned by Power Protection

Products, Inc. and Thermal Sensing Products, Inc., two Delaware Corporations.

7.    Airpax Corporation, L.L.C., has a warehouse type facility in Brownsville, Texas to transition component parts and finished goods into and out of our plant located in Matamoros, Mexico.   There is no one in the Brownsville, Texas Airpax facility with any decision making responsibilities of any significance.   This is the only facility of Airpax Corporation, L.LC. located within the entire state of Texas.

Michael V. Rabasca

Sworn to and subscribed before me on this the 28 day of October, 2002.

NOTARY PUBLIC
Judy C. Durham
Printed name:
My Commission Expires: 12/1/04

Judy L. Durham, Notary Public
Dorchester County
State of Maryland
My Commission Expires Dec. 1, 2004

A

*Schedule II*

## Initial Contributions

| MEMBER | CONTRIBUTION | UNITS |
|---|---|---|
| Power Protection Products, Inc. | $195.00 | 195 |
| Electronic Packaging Products, Inc. | $30.00 | 30 |
| Thermal Sensing Products, Inc. | $75.00 | 75 |

## Membership Percentages

| MEMBER | MEMBERSHIP PERCENTAGE AS OF DECEMBER 22ND, 1998 |
|---|---|
| Power Protection Products, Inc. | 65% |
| Electronic Packaging Products, Inc. | 10% |
| Thermal Sensing Products, Inc. | 25% |

**FINAL**

## AMENDED AND RESTATED
## LIMITED LIABILITY COMPANY AGREEMENT
## OF
## AIRPAX ACQUISITION, LLC

This Amended and Restated Limited Liability Company Agreement (this *"Agreement"*) of Airpax Acquisition, LLC is entered into by and among Power Protection Products, Inc., a Delaware corporation, Electronic Packaging Products, Inc., a Delaware corporation and Thermal Sensing Products, Inc., a Delaware corporation, as members (the *"Members"*).

The Members hereby form a limited liability company pursuant to and in accordance with the Delaware Limited Liability Company Act (*6 Del. C.* §18-101, *et seq.*), as amended from time to time (the *"Act"*), and hereby agree as follows:

1.    *Name and Address.*  The name of the limited liability company formed hereby is Airpax Acquisition, LLC (the *"Company"*). The mailing address of each of the Members is: c/o Industrial Growth Partners, L.P., 100 Spear Street, Suite 310, San Francisco, CA 94105.

2.    *Purpose.*  The Company is formed for the object and purpose of, and the nature of the business to be conducted and promoted by the Company is, engaging in any lawful act or activity for which limited liability companies may be formed under the Act and engaging in any and all activities necessary or incidental to the foregoing.

3.    *Rights and Duties of Managers.*

(a)    *Management.*  The powers of the Company shall be exercised by and under the authority of, and the business and affairs of the Company shall be managed by, the Board of Managers (the *"Managers"* or *"Board"*).  In addition to the powers and authorities expressly conferred by this Agreement upon the Managers, the Managers may exercise all such powers of the Company and do all such lawful acts and things as are not directed or required to be exercised or done by the Members by the Act or this Agreement, including, but not limited to, contracting for or incurring debts, liabilities and other obligations on behalf of the Company.

(b)    *Number and Qualifications.*  The number of members of the Board shall be five.  The number of members of the Board may be increased by resolution of the Board.  Industrial Growth Partners, LP (*"IGP"*) shall be entitled to designate four members of the Board (each an *"IGP Manager"*), and the fifth member of the Board shall be the chief executive officer of Airpax Acquisition, LLC, a Delaware limited liability company (the *"Non-IGP Manager"*).

(c) *Board.* The following individuals are hereby elected to serve as the members of the Board:

> R. Patrick Forster
> Michael H. Beaumont
> Gottfried P. Tittiger
> Robert F. X. Burlinson
> Dennis K. Karr

Each such individual, or any other Manager, shall hold office until he or she dies, resigns or is removed by action of the Members.

(d) *Vacancy.* In the event that any Manager designated hereunder for any reason ceases to serve as a member of the Board during such Manager's term of office, the resulting vacancy on the Board shall be filled by a representative designated by IGP.

(e) *Removal.* Any Manager may be removed from the Board (with or without cause) at the written request of IGP but only upon such written request and under no other circumstances.

(f) *Meetings of Managers.* Meetings of the Managers may be held at such time and place either within or without the State of Delaware as shall from time to time be determined by the Managers. Meetings of the Managers may be called by a majority of the Managers on not fewer than five business days' written notice to each Manager.

(g) *Quorum.* At all meetings of the Managers, the presence of a majority of the Managers shall be necessary and sufficient to constitute a quorum for the transaction of business unless a greater number is required by law. The act of a majority of the Managers shall be the act of the Managers, except as otherwise provided by law or this Agreement. If a quorum shall not be present at any meeting of the Managers, the Managers present at the meeting may adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum shall be present. A Manager may vote or be present at a meeting either in person or by proxy.

(h) *Attendance and Waiver of Notice.* Attendance of a Manager at any meeting shall constitute a waiver of notice of such meeting, except where a Manager attends a meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting is not lawfully called or convened. Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the Managers need be specified in the notice or waiver of notice of such meeting.

(i) *Compensation of Managers.* Managers, as such, shall not receive any stated salary for their services. A fixed sum and expenses of attendance, if any, may be allowed for attendance at each regular or special meeting of the Managers, provided that nothing contained in this Agreement shall be construed to preclude any Manager from serving the Company in any other capacity and receiving compensation for such service.

(j)    *Officers.*  The Managers may, from time to time, designate one or more persons to be officers of the Company.  No officer need be a Member or a Manager.  Any officers so designated shall have such authority and perform such duties as the Managers may, from time to time, delegate to them.  The Managers may assign titles to particular officers, including, without limitation, chief executive officer, president, vice president, chief operating officer, secretary, assistant secretary, treasurer and assistant treasurer.  Each officer shall hold office until his or her successor shall be duly designated and shall qualify or until his or her death or until he or she shall resign or shall have been removed.  Any number of offices may be held by the same person.  The salaries or other compensation, if any, of the officers and agents of the Company shall be fixed from time to time by the Managers.  Any officer may be removed as such, either with or without cause, by the Managers whenever in their judgment the best interests of the Company will be served thereby.  Any vacancy occurring in any office of the Company may be filled by the Managers.  The officers and their respective titles are identified on the attached *Schedule I.*

(k)    *Committees of Managers.*

(i)    *Creation.*  The Managers may, by resolution, designate from among the Managers one or more committees (including, but not limited to, an Audit Committee and a Compensation Committee), each of which shall be comprised of one or more Managers, and may designate one or more of the Managers as alternate members of any committee, who may, subject to any limitations imposed by the Managers, replace absent or disqualified Managers at any meeting of that committee.  Any such committee, to the extent provided in such resolution, shall have and may exercise all of the authority of the Managers, subject to the limitations set forth in the Act or in the establishment of the committee.  Any members thereof may be removed by a majority of the Managers.  Unless the resolution designating a particular committee or this Agreement expressly so provides, a committee of the Managers shall not have the authority to authorize or make a distribution of Company cash or property to the Members or to authorize the issuance of interests in the Company.

(ii)    *Limitation of Authority.*  No committee of the Managers shall have the authority of the Managers in reference to:

(A)    amending this Agreement, except that a committee may, to the extent provided in the resolution designating that committee or in this Agreement, exercise the authority of the Managers provided in this Agreement to establish the relative rights and preferences of the membership interests of any class or series;

(3)    approving a plan of merger of the Company or the sale of all or substantially all of the assets of the Company;

(C)    recommending to the Members a voluntary dissolution of the Company or a revocation thereof;

(D)    filling vacancies in the Managers;

(E)    fixing the compensation of any member or alternate members of such committee; or

(F)    altering or repealing any resolution of the Managers that by its terms provides that it shall not be so amendable or repealable.

(l)    *Issuances of Units.*  The Managers shall have sole and complete discretion in determining whether to issue a fractional part of the membership interests of the Company ("*Units*"), the number of Units to be issued at any particular time, the purchase price for any Units issued, and all other terms and conditions governing any Units or the issuance thereof.  The purchase price for any Unit shall be paid to the Company in cash or cash equivalents, or if approved by the Managers, any other form of consideration.

(m)    *Actions Without a Meeting and Telephone Meetings.*  Notwithstanding any provision contained in this Agreement, any action of the Managers may be taken by written consent without a meeting, or any meeting thereof may be held by means of a conference telephone connection.  Any such action taken by the Managers without a meeting shall be effective only if the written consent or consents are in writing, set forth the action so taken, are signed by a majority of the Managers, or such greater number of Managers that would be necessary to take such action at a meeting of the Managers and delivered to the Non-IGP Manager.

(n)    *Indemnification.*  To the fullest extent permitted by the Act, a Manager shall not be liable to the Company or any Member for monetary damages for a breach of duty to the Company or any Member.  The Managers shall be indemnified and held harmless by the Company, including advancement of expenses, but only to the extent that the Company's assets are sufficient therefor, from and against all claims, liabilities, and expenses arising out of any management of Company affairs (but excluding those caused by the gross negligence or willful misconduct of the Manager), to the fullest extent permitted by, but subject to all limitations and requirements imposed by, the Act.  These indemnification rights are in addition to any rights that the Managers may have against third parties.

4.    *Meetings of Members.*

(a)    *Actions Without a Meeting and Telephone Meetings.*  Notwithstanding any provision contained in this Agreement, any action of the Members may be taken by written consent without a meeting, or any meeting thereof may be held by means of a conference telephone connection.  Any such action taken by the Members without a meeting shall be effective only if the written consent or consents are in writing, set forth the action so taken, and are signed by Members that own Units which represent more than 50% of the Units then outstanding.

(b)    *Limitation of Liability.*  Except as otherwise provided in the Act or in this Agreement, no Member will be obligated personally for any debt, obligation or liability of the Company or of any other Member by reason of being a Member.  Except as otherwise provided in the Act, by law or expressly in this Agreement, no Member (in such capacity) will have any fiduciary or other duty to another Member with respect to the business and affairs of the Company.

No Member will have any responsibility to restore any negative balance in its Capital Account or to contribute to or in respect of the liabilities or obligations of the Company or return distributions made by the Company except as required by the Act or other applicable law.

5.   *Elections and Reports.*

(a)   *Generally.*  The Company will keep appropriate books and records with respect to the Company's business, including all books and records necessary to provide any information, lists and copies of documents required to be provided pursuant to Section 5(b) or pursuant to applicable laws.

(b)   *Reports.*  The Company will use reasonable efforts to deliver or cause to be delivered, by March 31 of each year, to each person who was a Unitholder at any time during the previous Fiscal Year, all information necessary for the preparation of such person's United States federal income tax returns and any state, local and foreign income tax returns which such person is required to file as a result of the Company being engaged in a trade or business within such state, local or foreign jurisdiction, including a statement showing such person's share of income, gains, losses, deductions and credits for such year for United States federal income tax purposes (and, if applicable, state, local or foreign income tax purposes) and the amount of any Distributions made to or for the account of such person. Upon the written request of any such person made not later than 30 days after the end of each Fiscal Year and at the sole expense of such person, the Company will use reasonable efforts to deliver or cause to be delivered any additional information necessary for the preparation of any state, local and foreign income tax returns which must be filed by such person.

(c)   *Separate Financial Statements.*  The Company shall prepare and deliver or cause to be delivered, by March 31 of each year, to each person who was a Unitholder during the previous Fiscal Year audited income statements showing PPP Profits and Losses, EPP Profits and Losses and TSP Profits and Losses.

(d)   *Tax Elections.*  The taxable year of the Company will be the Fiscal Year, unless the Tax Matters Partner determines otherwise in compliance with applicable laws. The Tax Matters Partner will determine whether to make or revoke any available election pursuant to the Code. Each Unitholder will upon request supply the information necessary to give proper effect to any such election.

(e)   *Tax Controversies.*  Power Protection Products, Inc. is designated the "Tax Matters Partner" (as defined in Code §6231) for the Company and is authorized and required to represent the Company (at the Company's expense) in connection with all examinations of the Company's affairs by tax authorities, including resulting administrative and judicial proceedings, and to expend Company funds for professional services and costs associated therewith. Each Unitholder agrees to cooperate with the Tax Matters Partner and to do or refrain from doing any or all things reasonably requested by the Tax Matters Partner with respect to the conduct of such proceedings. Subject to the foregoing proviso, the Tax Matters Partner will have sole discretion to determine whether the Company (either in its own behalf or on behalf of the Unitholders) will contest or continue to contest any tax deficiencies assessed or proposed to be assessed by any taxing

authority. Any deficiency for taxes imposed on any Unitholder (including penalties, additions to tax or interest imposed with respect to such taxes) will be paid by such Unitholder.

6. *Dissolution.* The Company shall dissolve, and its affairs shall be wound up upon the first to occur of the following (a) the written consent of all of the Members or (b) the death, retirement, resignation, expulsion, insolvency, bankruptcy or dissolution of a Member or the occurrence of any other event which terminates the continued membership of a Member in the Company unless the business of the Company is continued by consent of the remaining Member(s) within 90 days following the occurrence of any such event or (c) the entry of a decree of judicial dissolution under §18-802 of the Act.

7. *Capital Contributions.* The initial Members made Capital Contributions as set forth on *Schedule II.* The name and Unit ownership of each Member are set forth on the attached *Schedule II.* The Board may cause the Company to accept additional Capital Contributions in proportion to their Membership Percentages (as set forth on *Schedule II* hereto) from time to time. The Board may amend such *Schedule II* from time to time to reflect changes in such names, addresses, ownership and/or Capital Contributions, including by reason of the admission or withdrawal of any Member or the transfer of any Unit.

8. *Capital Accounts.*

(a) *Generally.* The Company will maintain a separate Capital Account for each Unitholder according to the rules of Treasury Regulation §1.704-1(b)(2)(iv). For this purpose, the Company may, upon the occurrence of the events specified in Treasury Regulation §1.704-1(b)(2)(iv)(f), increase or decrease the Capital Accounts in accordance with the rules of such regulation and Treasury Regulation §1.704-1(b)(2)(iv)(g) to reflect a revaluation of Company property.

(b) *Method of Determining Profit and Loss.* For purposes of computing the amount of any item of Company income, gain, loss or deduction to be allocated pursuant to Section 9 and to be reflected in the Capital Accounts, the determination, recognition and classification of any such item will be the same as its determination, recognition and classification for federal income tax purposes (including any method of depreciation, cost recovery or amortization used for this purpose); *provided* that:

(i) the computation of all items of income, gain, loss and deduction will include tax-exempt income and those items described in Code §705(a)(1)(B), Code §705(a)(2)(B) and Treasury Regulation §1.704-1(b)(2)(iv)(i). without regard to the fact that such items are not includable in gross income or are not deductible for federal income tax purposes;

(ii) if the Book Value of any Company property is adjusted pursuant to Treasury Regulation §1.704-1(b)(2)(iv)(e) or (f). the amount of such adjustment will be taken into account as gain or loss from the disposition of such property;

(iii)   items of income, gain, loss or deduction attributable to the disposition of Company property having a Book Value that differs from its adjusted basis for tax purposes will be computed by reference to the Book Value of such property;

(iv)   items of depreciation, amortization and other cost recovery deductions with respect to Company property having a Book Value that differs from its adjusted basis for tax purposes will be computed by reference to the property's Book Value in accordance with Treasury Regulation §1.704-1(b)(2)(iv)(g); and

(v)   to the extent an adjustment to the adjusted tax basis of any Company asset pursuant to Code §§ 732(d), 734(b) or 743(b) is required, pursuant to Treasury Regulation §1.704-1(b)(2)(iv)(m), to be taken into account in determining Capital Accounts, the amount of such adjustment to the Capital Accounts will be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis).

(c)   *No Interest*.   No interest will be paid by the Company on Capital Contributions or on balances in Capital Accounts.

(d)   *No Withdrawal.*   No person will be entitled to withdraw any part of a Capital Contribution or Capital Account or to receive any Distribution from the Company, except as expressly provided in this Agreement.

9.   *Allocations*.

(a)   *Regular Allocations*.

(i)   *Generally*.   Except as otherwise provided in Section 9(b), items of Profit and Loss for any Fiscal Year or any other period (as the Board may determine) will be allocated among the Unitholders in such manner that, as of the end of such Fiscal Year or other period, (A) all PPP Profits and Losses shall be allocated to PPP, (B) all EPP Profits and Losses shall be allocated to EPP, and (C) all TSP Profits and Losses shall be allocated to TSP.

(ii)   *Allocation for Net Profit Year*.   For purposes of this Section 9(a), subject to Section 9(a)(iv), if Profits exceed Losses for a Fiscal Year or other period, then (A) Losses will first be allocated to Unitholders whose Capital Accounts are to be reduced as a result of the allocations under Section 9(a)(i), in amounts equal to the respective amounts by which such Capital Accounts are to be so reduced, and (B) Profits and any remaining Losses will be allocated to Unitholders whose Capital Accounts are to be increased as a result of the allocations under Section 9(a)(i), in the proportion that the amounts of the increases to be so effected in each such Unitholder's respective Capital Accounts bears to the aggregate amount of the increase to be effected in all such Unitholders' Capital Accounts as a result of the allocations under Section 9(a)(i).

(iii)   *Allocation for Net Loss Year*.   For purposes of this Section 9(a), subject to Section 9(a)(iv), if Losses exceed Profits for a Fiscal Year or other period, then (A) Profits will first be allocated to Unitholders whose Capital Accounts are to be increased as a result of the

allocations under Section 9(a)(i), in amounts equal to the respective amounts by which such Capital Accounts are to be so increased, and (B) Losses and any remaining Profits will be allocated to Unitholders whose Capital Accounts are to be reduced as a result of the allocations under Section 9(a)(i), in the proportion that the amounts of the reductions to be effected in each such Unitholder's respective Capital Accounts bears to the aggregate amount of the reduction to be so effected in all such Unitholders' Capital Accounts as a result of the allocations under Section 9(a)(i).

   (iv) *Negative Capital Account Balances.* If all items of Profit for a Fiscal Year or other period have been allocated in accordance with Section 9(a)(i) and there remain items of Loss to be allocated, then such items of Loss will be allocated to the Unitholders pro rata according to the number of Units held by each of them. If, prior to making any allocation of items of Profit or Loss for any Fiscal Year or other period, any Unitholder has a negative Capital Account balance, then items of Profit will be allocated to all such Unitholders, pro rata according to the amounts by which their respective Capital Account balances are less than zero, until no Unitholder has a negative Capital Account balance.

   (b) *Special Allocations.*

   (i) *Nonrecourse Debt.* Losses attributable to a partner nonrecourse debt (as defined in Treasury Regulation §1.704-2(b)(4)) will be allocated in the manner required by Treasury Regulation §1.704-2(i)). If there is a net decrease during a Fiscal Year in partner nonrecourse debt minimum gain (as defined in Treasury Regulation §1.704-2(i)(3)), then Profits for such Fiscal Year (and, if necessary, for subsequent Fiscal Years) will be allocated to the Unitholders in the amounts and of such character as determined according to, and subject to the exceptions contained in, Treasury Regulation §1.704-2(i)(4).

   (ii) *Minimum Gain Chargeback.* Except as otherwise provided in Section 9(b)(i), if there is a net decrease in the Minimum Gain during any Fiscal Year, then each Unitholder will be allocated Profits for such Fiscal Year (and, if necessary, for subsequent Fiscal Years) in the amounts and of such character as determined according to, and subject to the exceptions contained in, Treasury Regulation § 1.704-2(f). This Section 9(b)(ii) is intended to be a minimum gain chargeback provision that complies with the requirements of Treasury Regulation §1.704-2(f), and will be interpreted in a manner consistent with such intention.

   (iii) *Qualified Income Offset.* If any Unitholder who unexpectedly receives an adjustment, allocation, or distribution described in Treasury Regulation §1.704-1(b)(2)(ii)(d)(4), (5), and (6) has an Adjusted Capital Account Deficit as of the end of any Fiscal Year, computed after the application of Sections 9(b)(i) and 9(b)(ii) but before the application of any other provision of Section 9(a) or Section 9(b), then Profits for such Fiscal Year will be allocated to such Unitholder in proportion to, and to the extent of, such Adjusted Capital Account Deficit. This Section 9(b)(iii) is intended to be a qualified income offset provision as described in Treasury Regulation §1.704-1(b)(2)(ii)(d) and will be interpreted in a manner consistent with such intention.

   (iv) *Adjustment of Tax Basis.* Profits and Losses described in Section 8(b)(v) will be allocated in a manner consistent with the manner that the adjustments to the

Capital Accounts are required to be made pursuant to Treasury Regulation §1.704-1(b)(2)(iv)(j), (k) and (m).

        (v)    *Transaction with Unitholder.* If, and to the extent that, any Unitholder is deemed to recognize any item of income, gain, loss, deduction or credit as a result of any transaction between such Unitholder and the Company pursuant to any of Code §§ 1272-1274, 7872, 483, 482 and 83 or any similar provision now or hereafter in effect, and the Tax Matters Partner determines that any corresponding Profit or Loss of the Company shall be allocated to the Unitholder who recognized such item in order to reflect the Unitholders' economic interests in the Company, then the Company shall so allocate such Profit or Loss.

        (c)    *Tax Allocations.*

        (i)    *Generally.* The income, gains, losses, deductions and credits of the Company will be allocated, for federal, state and local income tax purposes, among the Unitholders in accordance with the allocation of such income, gains, losses, deductions and credits among the Unitholders for computing their Capital Accounts, *except that* if any such allocation is not permitted by the Code or other applicable law, the Company's subsequent income, gains, losses, deductions and credit will be allocated among the Unitholders so as to reflect as nearly as possible the allocation set forth in this Agreement in computing their Capital Accounts.

        (ii)    *Differences Between Book Value and Tax Basis.* Items of Company taxable income, gain, loss and deduction with respect to any property contributed to the capital of the Company will be allocated among the Unitholders in accordance with Code §704(c) so as to take account of any variation between the adjusted basis of such property to the Company for federal income tax purposes and its Book Value.

        (iii)    *Adjustments in Book Value.* If the Book Value of any Company asset is adjusted pursuant to Section 8(b), then subsequent allocations of items of taxable income, gain, loss and deduction with respect to such asset will take into account any variation between the adjusted basis of such asset for federal income tax purposes and its Book Value in the same manner as under Code §704(c).

        (iv)    *Allocations of Credits and the Like.* Allocations of tax credits, tax credit recapture, and any items related thereto will be allocated to the Unitholders according to their interests in such items as determined by the Tax Matters Partner, taking into account the principles of Treasury Regulation §1.704-1(b)(4)(ii).

        (v)    *No Effect on Capital Accounts.* Allocations pursuant to this Section 9(c) are solely for purposes of federal, state and local taxes and will not affect, or in any way be taken into account in computing, any Unitholder's Capital Account or share of Profits, Losses, Distributions or other items pursuant to any provision of this Agreement.

        (d)    *Curative Allocations.* If the Tax Matters Partner determines, after consultation with counsel experienced in income tax matters, that the allocation of any item of Company income,

gain, loss, deduction or credit (an "*unallocated item*") is not specified in this Agreement or that the allocation of any item of Company income, gain, loss, deduction or credit (a "*misallocated item*") under this Agreement is in the Board's reasonable judgment inconsistent with the Unitholders' economic interests in the Company (determined by reference to the general principles of Treasury Regulation §1.704-1(b) and the factors set forth in Treasury Regulation §1.704-1(b)(3)(ii)), then the Company shall allocate such unallocated items, or reallocate such misallocated items, to reflect such economic interests; *provided* that no such allocation will have any material effect on the amounts distributable to any Unitholder, including the amounts to be distributed upon the complete liquidation of the Company.

     10.    *Distributions.*  As and when determined by the Board, the Company may make Distributions at any time or from time to time in the following order:

     (a)    *Generally.*

     (i)    PPP shall be entitled to receive Distributions of the assets of PPP as reflected on its audited balance sheet.

     (ii)    EPP shall be entitled to receive Distributions of the assets of EPP as reflected on its audited balance sheet.

     (iii)    TSP shall be entitled to receive Distributions of the assets of TSP as reflected on its audited balance sheet.

     (b)    *Tax Distributions.*

The Company will use reasonable efforts, consistent with the Company's operating and capital requirements and the restrictions which may be imposed by any creditor of the Company or applicable law, to make Distributions pursuant to Section 10(a) in amounts such that, prior to April 15 of each calendar year, each Unitholder has received Distributions in aggregate amounts which equal not less than the sum for the immediately preceding Fiscal Year and for all prior Fiscal Years of (i) the amount of Profits allocated to such Member for such Fiscal Years, reduced by the amount of Losses allocated to such Unitholder for such Fiscal Years, multiplied by (ii) the maximum marginal tax rate applicable to corporate taxpayers pursuant to the Code in respect of income recognized during such Fiscal Year.  The Company will use reasonable efforts to cause such Distributions to be made in a manner which permits such Unitholders to use the proceeds of such Distributions to make on a timely basis all required estimated payments of income taxes in respect of the Profits so allocated to them.

     11.    *Definitions.*  Terms not otherwise defined herein shall have the following meanings.

     "*Adjusted Capital Account Deficit*" means, with respect to any Capital Account as of the end of any Fiscal Year or other period, the amount (if any) by which the balance in such Capital Account is less than zero.  For this purpose, such person's Capital Account balance will be (a) reduced for any items described in Treasury Regulation §1.704-1(b)(2)(ii)(d)(4), (5), and (6), and (b) increased

for any amount such person is obligated to contribute to the Company or is treated as being so obligated pursuant to Treasury Regulation §1.704-1(b)(2)(ii)(c) (relating to partner liabilities to a partnership) or 1.704-2(g)(1) and 1.704-2(i) (relating to minimum gain).

"*Book Value*" means, with respect to any Company property, the Company's adjusted basis for federal income tax purposes, adjusted from time to time to reflect the adjustments required or permitted by Treasury Regulation §1.704-1(b)(2)(iv)(d)-(g).

"*Capital Account*" means, with respect to any Member, the account maintained for such Member as provided in Section 8.

"*Capital Contribution*" means cash, cash equivalents, promissory obligations or the Fair Market Value of other property a Unitholder contributes or is deemed to have contributed to the Company, whenever made.

"*Code*" means the United States Internal Revenue Code of 1986, as amended and effective as of the date of this Agreement. At the Managing Members discretion, such term will be deemed to include any future amendments to such statutes and any corresponding provisions of succeeding statutes (whether or not such amendment and corresponding provisions are mandatory or discretionary).

"*Distribution*" means each distribution made by the Company to a Unitholder, whether in cash, securities of the Company or other property and whether by liquidating distribution, redemption, repurchase or otherwise; *provided* that none of the following will be a Distribution: (a) any redemption or repurchase by the Company of any Unit from any employee or former employee of the Company or any Subsidiary of the Company or any affiliate of any such employee or former employee which is approved by the Board, (b) any recapitalization or exchange of securities of the Company and (c) any subdivision (by split or otherwise) or any combination (by reverse split or otherwise) of any outstanding Units.

"*EPP*" means Electronic Packaging Products, Inc., a Delaware corporation.

"*EPP Profits and Losses*" means, for each Fiscal Year or part thereof, the Profits and Losses for such Fiscal Year attributable solely to the operations of EPP as reflected on its audited income statement.

"*Fiscal Year*" means the Company's fiscal year, which shall be the calendar year unless the Board determines otherwise.

"*Losses*" means items of loss and deduction of the Company determined according to Section 8(b).

"*Minimum Gain*" means Company minimum gain determined pursuant to Treasury Regulation §1.704-2(d).

"*Misallocated Item*" has the meaning given such term in Section 9(d) hereof.

"*PPP*" means Power Protection Products, Inc., a Delaware corporation.

"*PPP Profits and Losses*" means, for each Fiscal Year or part thereof, the Profits and Losses for such Fiscal Year attributable solely to the operations of PPP as reflected on its audited income statement.

"*Profits*" means items of income and gain of the Company determined according to Section 8(b).

"*Subsidiary*" means, with respect to any person, any corporation, limited liability company, partnership, association or other business entity of which (i) if a corporation, a majority of the total voting power of shares of stock entitled (without regard to the occurrence of any contingency) to vote in the election of directors, managers or trustees thereof is at the time owned or controlled, directly or indirectly, by such person or one or more of the other Subsidiaries of such person or a combination thereof, or (ii) if a limited liability company, partnership, association or other business entity, a majority of the partnership or other similar ownership interest thereof is at the time owned or controlled, directly or indirectly, by any person or one or more Subsidiaries of such person or entity or a combination thereof. For purposes of this Agreement, a person or persons shall be deemed to have a majority ownership interest in a limited liability company, partnership, association or other business entity if such person or persons shall be allocated a majority of limited liability company, partnership, association or other business entity gains or losses or shall be or control any managing director, managing member, or general partner of such limited liability company, partnership, association or other business entity.

"*Tax Matters Partner*" has the meaning set forth in Code §6231.

"*Treasury Regulations*" means the income tax regulations promulgated under the Code and effective as of the date of this Agreement. At the discretion of the Managing Member, such term will be deemed to include any future amendments to such regulations and any corresponding provisions of succeeding regulations (whether or not such amendment and corresponding provisions are mandatory or discretionary).

"*TSP*" means Thermal Sensing Products. Inc.. a Delaware corporation.

"*TSP Profits and Losses*" means. for each Fiscal Year or part thereof. the Profits and Losses for such Fiscal Year attributable solely to the operations of TSP as reflected on its audited income statement.

"*Unallocated Item*" has the meaning set forth in Section 9(d) hereof.

"*Unit*" means a fractional part of the membership interests of the Company; *provided* that any class of Units issued will have designations, preferences or special rights set forth in this

Agreement, and the Company interest represented by such class of Units will be determined in accordance with such designations, preferences or special rights.

"*Unitholder*" means any person, whether or not a Member, in its capacity as owner of one or more outstanding Units, as reflected on the Company's books and records.

12.   *Assignments.*  A Member may not assign in whole or in part his limited liability company interest without the written consent of the other Members which consent may be granted or withheld in each of their sole and absolute discretion.

13.   *Resignation.*  A Member may not resign from the Company without the other Members' consent.

14.   *Liability of Members.*  The Members shall not have any liability for the obligations or liabilities of the Company except to the extent provided in the Act.

15.   *Governing Law.*  All issues and questions concerning the application, construction, validity, interpretation and enforcement of this Agreement and the exhibits and schedules to this Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware, and specifically the Act, without giving effect to any choice of law or conflict of law rules or provisions (whether of the State of Delaware or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Delaware.

16.   *Headings and Sections.*  The headings in this Agreement are inserted for convenience only and are in no way intended to describe, interpret, define, or limit the scope, extent or intent of this Agreement or any provision of this Agreement.

17.   *Amendments.*  This Agreement may be amended, supplemented or restated only upon the written consent of all of the Members.

18.   . *Binding Effect.*  Except as otherwise provided to the contrary in this Agreement, this Agreement shall be binding upon and inure to the benefit of the Members, their distributees, heirs, legal representatives, executors, administrators, successors and permitted assigns.

19.   *Counterparts.*  This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original and shall be binding upon the Member who executed the same, but all of such counterparts shall constitute the same agreement.

20.   *Severability.*  Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of this Agreement

21.    *Entire Agreement.*  Except as otherwise expressly set forth in this Agreement, this Agreement and the other agreements referred to in this Agreement embody the complete agreement and understanding among the parties to this Agreement with respect to the subject matter of this Agreement and supersedes and preempts any prior understandings, agreements or representations by or among the parties, written or oral, which may have related to the subject matter of this Agreement in any way.

## [SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, have duly executed this Amended and Restated Limited Liability Company Agreement as of the 16th day of February, 1999.

POWER PROTECTION PRODUCTS, INC.

By: _____

Name:    Dennis Karr
Title:    President

ELECTRONIC PACKAGING PRODUCTS, INC.

By: _____

Name:    Dennis Karr
Title:    President

THERMAL SENSING PRODUCTS, INC.

By: _____

Name:    Dennis Karr
Title:    President

*Schedule I*

## Officers

| NAME | TITLE |
| --- | --- |
| Dennis Karr | President |
| Michael Rabasca | Secretary and Treasurer |
| Gottfried Tittiger | Assistant Secretary |
| Robert Burlinson | Assistant Treasurer |

B

### State of Delaware

## Office of the Secretary of State

PAGE 1

I, EDWARD J. FREEL, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF LIMITED LIABILITY COMPANY OF "AIRPAX ACQUISITION, LLC", FILED IN THIS OFFICE ON THE TWENTY-SECOND DAY OF DECEMBER, A.D. 1998, AT 9 O'CLOCK A.M.

Edward J. Freel, Secretary of State

AUTHENTICATION: 9483889

DATE: 12-23-98

2964882 8100

981498531

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 09:00 AM 12/22/1998
981498531 - 2964882

# CERTIFICATE OF FORMATION

## OF

## AIRPAX ACQUISITION, LLC

This Certificate of Formation of Airpax Acquisition, LLC (the "LLC") has been duly executed and is being filed by the undersigned, as an authorized person, to form a limited liability company under the Delaware Limited Liability Company Act (6 Del. C. § 18-101, et. seq.).

FIRST:  The name of the limited liability company formed hereby is Airpax Acquisition, LLC.

SECOND:  The address of the registered office of the LLC in the State of Delaware is c/o Corporation Service Company, 1013 Centre Road, Wilmington, Delaware 19805.

THIRD: The name and address of the registered agent for service of process on the LLC in the State of Delaware is Corporation Service Company, 1013 Centre Road, Wilmington, Delaware 19805.

IN WITNESS WHEREOF, the undersigned has duly executed this Certificate of Formation as of this 22nd day of December, 1998.

Airpax Acquisition, LLC

By:  _Donna McClurkin-Fletcher_

Name: Donna McClurkin-Fletcher
Title:  Authorized Person

H:\CORPORATIVSP\Airpax\Combined\LLC\Conform\Airpax Acquisition.DOC.wpd

### State of Delaware

## Office of the Secretary of State    PAGE  1

I, EDWARD J. FREEL, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF AMENDMENT OF "AIRPAX ACQUISITION,
LLC", CHANGING ITS NAME FROM "AIRPAX ACQUISITION, LLC" TO
"AIRPAX CORPORATION, LLC", FILED IN THIS OFFICE ON THE
TWENTY-NINTH DAY OF APRIL, A.D. 1999, AT 9 O'CLOCK A.M.



Edward J. Freel, Secretary of State

2964882  8100                AUTHENTICATION:    9718152

991171622                    DATE:    04-30-99

OCT-25-02 16:16 FROM:AIRPAX CORP        ID:410228    5       PAGE   4/12

*STATE OF DELAWARE*
*SECRETARY OF STATE*
*DIVISION OF CORPORATIONS*
*FILED 09:00 AM 04/29/1999*
*991171622 - 2964882*

# CERTIFICATE OF AMENDMENT

## OF

## AIRPAX ACQUISITION, LLC

This Certificate of Amendment of Airpax Acquisition, LLC, has been duly executed and is being filed by the undersigned, as an authorized person, to amend a limited liability company under the Delaware Limited Liability Company Act (6 Del. C., §18-101, et seo).

It is hereby certified that:

1.     The name of the limited liability company is Airpax Acquisition, LLC (hereinafter called the "limited liability company").

2.     The Certificate of Formation of the limited liability company is hereby amended by striking out Article First thereof and by substituting in lieu of said Article First the following:

" FIRST: The name of the limited liability company is AIRPAX CORPORATION, LLC."

IN WITNESS WHEREOF, the undersigned has duly executed this Certificate of Amendment as of this 29 day of April, 1999.

AIRPAX ACQUISITION, LLC

By: _Dennis K Karr_

Name: Dennis K. Karr
Title: Authorized Person

D

*State of Delaware*

## *Office of the Secretary of State*   **PAGE   1**

---

    I, EDWARD J. FREEL, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF INCORPORATION OF "ELECTRONIC
PACKAGING PRODUCTS, INC.", FILED IN THIS OFFICE ON THE
TWENTY-SECOND DAY OF DECEMBER, A.D. 1998, AT 9 O'CLOCK A.M.

*Edward J. Freel, Secretary of State*

2983686  8100

991088204

AUTHENTICATION:  9614299

DATE:  03-08-99

*STATE OF DELAWARE*
*SECRETARY OF STATE*
*DIVISION OF CORPORATIONS*
*FILED 09:00 AM 12/22/1998*
*981498435 – 2983686*

# CERTIFICATE OF INCORPORATION

## OF

## ELECTRONIC PACKAGING PRODUCTS, INC.

The undersigned natural person of the age of eighteen years or more for the purpose of organizing a corporation for conducting the business and promoting the purposes hereinafter stated, under the provisions and subject to the requirements of the laws of the State of Delaware (particularly Chapter 1, Title 8 of the Delaware Code and the acts amendatory thereof and supplemental thereto, and known, identified, and referred to as the "General Corporation Law of the State of Delaware"), hereby certifies that:

### ARTICLE FIRST:

The name of the corporation is Electronic Packaging Products, Inc. (hereinafter the "Corporation").

### ARTICLE SECOND:

The address of the Corporation's registered office in the State of Delaware is 1013 Centre Road, Wilmington, Delaware, 19805, in the City of Wilmington, County of New Castle. The name of the registered agent at such address is the Corporation Service Company.

### ARTICLE THIRD:

The nature of the business or purposes to be conducted or promoted is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware.

### ARTICLE FOURTH:

The total number of shares of stock which the Corporation has the authority to issue is 1,000 shares of Common Stock, with a par value of $0.01 per share.

### ARTICLE FIFTH:

The name and address of the sole incorporator is as follows:

*NAME:*
Donna McClurkin-Fletcher

*ADDRESS:*
c/o Kirkland & Ellis
655 Fifteenth Street, NW
Washington, DC 20005

I:\CORPORATION\Airpax\Corpdocs\Certincrm Electronic.wpd

## ARTICLE SIXTH:

The Corporation is to have perpetual existence.

## ARTICLE SEVENTH:

In furtherance and not in limitation of the powers conferred by statute, the board of directors of the Corporation is expressly authorized to make, alter or repeal the By-Laws of the Corporation.

## ARTICLE EIGHTH:

Meetings of stockholders may be held within or without the State of Delaware, as the By-Laws of the Corporation may provide. The books of the Corporation may be kept outside the State of Delaware at such place or places as may be designated from time to time by the board of directors or in the By-Laws of the Corporation. Election of directors need not be by written ballot unless the By-Laws of the Corporation so provide.

## ARTICLE NINTH:

To the fullest extent permitted by the General Corporation Law of the State of Delaware as the same exists or may hereafter be amended, a director of this Corporation shall not be liable to the Corporation or its stockholders for monetary damages for a breach of fiduciary duty as director. Any repeal or modification of this Article Ninth shall not adversely affect any right or protection of a director of the Corporation existing at the time of such repeal or modification.

## ARTICLE TENTH:

The Corporation expressly elects not to be governed by Section 203 of the General Corporation Law of the State of Delaware.

## ARTICLE ELEVENTH:

The Corporation reserves the right to amend, alter, change or repeal any provision contained in this certificate of incorporation in the manner now or hereafter prescribed herein and by the laws of the State of Delaware, and all rights conferred upon stockholders herein are granted subject to this reservation.

I, the undersigned, being the sole incorporator hereinbefore named, for the purpose of forming a corporation in pursuance of the General Corporation Law of the State of Delaware, do make and file this certificate, hereby declaring and certifying that the facts herein stated are true, and accordingly have hereunto set my hand this 22nd day of December, 1998.

Donna McClurkin-Fletcher, Sole Incorporator

I:\CORPORATION\AirportCorpdocs\EEP\Certincon.Electronic.wpd

## State of Delaware

## Office of the Secretary of State    PAGE  1

I, EDWARD J. FREEL, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF INCORPORATION OF "POWER PROTECTION PRODUCTS, INC.", FILED IN THIS OFFICE ON THE TWENTY-SECOND DAY OF DECEMBER, A.D. 1998, AT 9 O'CLOCK A.M.

Edward J. Freel, Secretary of State

2983689   8100

991088188

AUTHENTICATION:  9614313

DATE:   03-08-99

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 09:00 AM 12/22/1998
981498463 - 2983689

# CERTIFICATE OF INCORPORATION

## OF

## POWER PROTECTION PRODUCTS, INC.

The undersigned natural person of the age of eighteen years or more for the purpose of organizing a corporation for conducting the business and promoting the purposes hereinafter stated, under the provisions and subject to the requirements of the laws of the State of Delaware (particularly Chapter 1, Title 8 of the Delaware Code and the acts amendatory thereof and supplemental thereto, and known, identified, and referred to as the "General Corporation Law of the State of Delaware"), hereby certifies that:

### ARTICLE FIRST:

The name of the corporation is Power Protection Products, Inc. (hereinafter the "Corporation").

### ARTICLE SECOND:

The address of the Corporation's registered office in the State of Delaware is 1013 Centre Road, Wilmington, Delaware, 19805, in the City of Wilmington, County of New Castle. The name of the registered agent at such address is the Corporation Service Company.

### ARTICLE THIRD:

The nature of the business or purposes to be conducted or promoted is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware.

### ARTICLE FOURTH:

The total number of shares of stock which the Corporation has the authority to issue is 1,000 shares of Common Stock, with a par value of $0.01 per share.

### ARTICLE FIFTH:

The name and address of the sole incorporator is as follows:

**NAME:**
Donna McClurkin-Fletcher

**ADDRESS:**
c/o Kirkland & Ellis
655 Fifteenth Street, NW
Washington, DC 20005

I:\CORPORATI\GP\Airpax\Corpdocs\Certinam.Power.wpd

## ARTICLE SIXTH:

The Corporation is to have perpetual existence.

## ARTICLE SEVENTH:

In furtherance and not in limitation of the powers conferred by statute, the board of directors of this Corporation is expressly authorized to make, alter or repeal the By-Laws of the Corporation.

## ARTICLE EIGHTH:

Meetings of stockholders may be held within or without the State of Delaware, as the By-Laws of the Corporation may provide. The books of the Corporation may be kept outside the State of Delaware at such place or places as may be designated from time to time by the board of directors or in the By-Laws of the Corporation. Election of directors need not be by written ballot unless the By-Laws of the Corporation so provide.

## ARTICLE NINTH:

To the fullest extent permitted by the General Corporation Law of the State of Delaware as the same exists or may hereafter be amended, a director of this Corporation shall not be liable to the Corporation or its stockholders for monetary damages for a breach of fiduciary duty as director. Any repeal or modification of this Article Ninth shall not adversely affect any right or protection of a director of the Corporation existing at the time of such repeal or modification.

## ARTICLE TENTH:

The Corporation expressly elects not to be governed by Section 203 of the General Corporation Law of the State of Delaware.

## ARTICLE ELEVENTH:

The Corporation reserves the right to amend, alter, change or repeal any provision contained in this certificate of incorporation in the manner now or hereafter prescribed herein and by the laws of the State of Delaware, and all rights conferred upon stockholders herein are granted subject to this reservation.

I:\CORPORA\VGP\Airpax\Corpdocs\Certmem_Power.wpd     2

I, the undersigned, being the sole incorporator hereinbefore named, for the purpose of forming a corporation in pursuance of the General Corporation Law of the State of Delaware, do make and file this certificate, hereby declaring and certifying that the facts herein stated are true, and accordingly have hereunto set my hand this 22nd day of December, 1998.

Donna McClurkin-Fletcher, Sole Incorporator

F

## State of Delaware

## Office of the Secretary of State    PAGE 1

I, EDWARD J. FREEL, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF INCORPORATION OF "THERMAL SENSING
PRODUCTS, INC.", FILED IN THIS OFFICE ON THE TWENTY-SECOND DAY
OF DECEMBER, A.D. 1998, AT 9 O'CLOCK A.M.

Edward J. Freel, Secretary of State

2983694    8100

991088190

AUTHENTICATION:    9614328

DATE:    03-08-99

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 09:00 AM 12/22/1998
981498505 - 2983694

# CERTIFICATE OF INCORPORATION

## OF

## THERMAL SENSING PRODUCTS, INC.

The undersigned natural person of the age of eighteen years or more for the purpose of organizing a corporation for conducting the business and promoting the purposes hereinafter stated, under the provisions and subject to the requirements of the laws of the State of Delaware (particularly Chapter 1, Title 8 of the Delaware Code and the acts amendatory thereof and supplemental thereto, and known, identified, and referred to as the "General Corporation Law of the State of Delaware"), hereby certifies that:

### ARTICLE FIRST:

The name of the corporation is Thermal Sensing Products, Inc. (hereinafter the "Corporation").

### ARTICLE SECOND:

The address of the Corporation's registered office in the State of Delaware is 1013 Centre Road, Wilmington, Delaware, 19805, in the City of Wilmington, County of New Castle. The name of the registered agent at such address is the Corporation Service Company.

### ARTICLE THIRD:

The nature of the business or purposes to be conducted or promoted is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware.

### ARTICLE FOURTH:

The total number of shares of stock which the Corporation has the authority to issue is 1,000 shares of Common Stock, with a par value of $0.01 per share.

### ARTICLE FIFTH:

The name and address of the sole incorporator is as follows:

*NAME:*
Donna McClurkin-Fletcher

*ADDRESS:*
c/o Kirkland & Ellis
655 Fifteenth Street, NW
Washington, DC 20005

I:\CORPORA\IGP\Airpax\Corpdocs\TSP\Ceritcen\Thermal.wpd

### ARTICLE SIXTH:

The Corporation is to have perpetual existence.

### ARTICLE SEVENTH:

In furtherance and not in limitation of the powers conferred by statute, the board of directors of the Corporation is expressly authorized to make, alter or repeal the By-Laws of the Corporation.

### ARTICLE EIGHTH:

Meetings of stockholders may be held within or without the State of Delaware, as the By-Laws of the Corporation may provide. The books of the Corporation my be kept outside the State of Delaware at such place or places as may be designated from time to time by the board of directors or in the By-Laws of the Corporation. Election of directors need not be by written ballot unless the By-Laws of the Corporation so provide.

### ARTICLE NINTH:

To the fullest extent permitted by the General Corporation Law of the State of Delaware as the same exists or may hereafter be amended, a director of this Corporation shall not be liable to the Corporation or its stockholders for monetary damages for a breach of fiduciary duty as director. Any repeal or modification of this Article Ninth shall not adversely affect any right or protection of a director of the Corporation existing at the time of such repeal or modification.

### ARTICLE TENTH:

The Corporation expressly elects not to be governed by Section 203 of the General Corporation Law of the State of Delaware.

### ARTICLE ELEVENTH:

The Corporation reserves the right to amend, alter, change or repeal any provision contained in this certificate of incorporation in the manner now or hereafter prescribed herein and by the laws of the State of Delaware, and all rights conferred upon stockholders herein are granted subject to this reservation.

I:\CORPORATI\GP\Airpax\Corpdocs\TBP\Certincm.Thermal.wpd

I, the undersigned, being the sole incorporator hereinbefore named, for the purpose of forming a corporation in pursuance of the General Corporation Law of the State of Delaware, do make and file this certificate, hereby declaring and certifying that the facts herein stated are true, and accordingly have hereunto set my hand this 22nd day of December, 1998.

Donna McClurkin-Fletcher, Sole Incorporator

I:\CORPORATION\Airpax\Corpdocs\TSP\Certincm.Thermal.wpd